JMK:WK:MSA
F. #2017R01243

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 24 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

DANIELLE SINDZINGRE and
MURIEL BESCOND,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INDICTMENT

CR. No. 17 - 464
(T. 7, U.S.C., § 13(a)(2); T. 18, U.S.C.,
§§ 371, 2 and 3551 et seq.)

**SEYBERT, J.**

BROWN, M. J.

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendants and Other Individuals and Entities</u>

       1.    Société Générale, S.A. (Société Générale" or "the Bank") was a financial institution and global financial services company headquartered in Paris, France, with a branch in New York, New York.

       2.    The defendant DANIELLE SINDZINGRE, a citizen of the Republic of France, was the Global Head of Treasury for Société Générale.

       3.    The defendant MURIEL BESCOND, a citizen of the Republic of France, was the head of Société Générale's Paris treasury desk.

       4.    Manager-1, an individual whose identity is known to the Grand Jury, served as Head of Treasury at Société Générale's treasury desk in London in the United Kingdom.

5. Setter-1, an individual whose identity is known to the Grand Jury, was a trader on Société Générale's treasury desk in Paris, France.

6. Setter-2, an individual whose identity is known to the Grand Jury, was a trader on Société Générale's treasury desk in Paris, France.

7. Setter-3, an individual whose identity is known to the Grand Jury, was a trader on Société Générale's treasury desk in Paris, France.

8. Setter-4, an individual whose identity is known to the Grand Jury, was a trader on Société Générale's treasury desk in Paris, France.

II. The London Interbank Offered Rate

9. The London Interbank Offered Rate ("LIBOR") was a benchmark interest rate overseen by the British Bankers' Association ("BBA"), a trade association based in London. LIBOR was calculated every London business day by averaging the rates at which designated banks, known as "Contributor Panel" banks, estimated that they could borrow unsecured funds from other banks in ten currencies, including the United States Dollar ("USD"). Beginning in or about February 2009, Société Générale was a member of the USD LIBOR Contributor Panel.

10. Contributor Panel banks for each currency submitted their estimated borrowing rates for fifteen different borrowing periods ("maturities" or "tenors"), ranging in length from overnight to one year, including maturities of one month and three months. Thomson Reuters, acting as an agent for the BBA, received electronically the Contributor Panel banks' estimated interest rate submissions at or before approximately 11:10 a.m. on each business day in London. Among other currencies, Thomson Reuters received estimated interest rate submissions for USD LIBOR from sixteen designated Contributor Panel banks. Each Contributor Panel bank's submission was prepared by bank employees referred to as

2

"submitters" or "setters." Contributor Panel banks reported their USD LIBOR submissions to between two and five decimal places, and banks referred to one one-hundredth of one percent (0.01 percent) as one basis point. BBA rules required each Contributor Panel bank to present an honest and unbiased estimate of its borrowing costs.

11. After receiving submissions from the sixteen USD LIBOR Contributor Panel banks, Thomson Reuters: (a) ranked the submissions from highest to lowest; (b) excluded the four highest and four lowest submissions; and (c) averaged the remaining middle eight submissions ("the middle eight") to determine the official USD LIBOR rate (also referred to as the "fix"). Each business day in London, Thomson Reuters transmitted all of the Contributor Panel banks' individual LIBOR submissions and the final averaged LIBOR rate to three data centers for worldwide publication, including one such data center in Hauppauge, New York.

12. The published LIBOR rates were used to settle trades in various financial instruments, including Eurodollar futures contracts. The term "Eurodollar" refers to USDs on deposit in foreign banks for a fixed duration with a fixed yield. Eurodollar futures contracts are LIBOR-based derivatives, and their price reflected the predicted LIBOR at the end of the term of a three-month, $1,000,000 offshore deposit. Eurodollar futures contracts permit investors to trade on their predictions of increases and decreases in LIBOR and enable purchasers to hedge financial risk. Eurodollar futures contracts are traded as commodities on the Chicago Mercantile Exchange in Chicago, Illinois. Other financial instruments that reference LIBOR include interest rate swaps, fixed-income futures, options and forward rate agreements. LIBOR is also used in some instances to calculate credit card interest rates and home mortgage interest rates.

13. Before in or about May 2010, Société Générale made USD LIBOR submissions that were higher than many other members of the USD Contributor Panel, thus

3

indicating that Société Générale was paying higher interest rates than other banks in order to borrow money.

III. The Scheme

14. In or about and between May 2010 and October 2011, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with Manager-1, Setter-1, Setter-2, Setter-3, Setter-4 and others, engaged in a scheme to cause Société Générale to submit false and misleading USD LIBOR rates to the BBA via Thomson Reuters, so that it would appear to the public that Société Générale was able to borrow money at lower interest rates than the rates that were actually available to the Bank. The purpose of the scheme was to avoid anticipated reputational harm to Société Générale had the Bank submitted honest estimates of its borrowing rates, which rates were publicized through the LIBOR rate setting process. Société Générale's false and misleading submissions at times artificially reduced the USD LIBOR fix, thereby affecting millions of financial transactions tied to USD LIBOR.

15. As Global Head of Treasury, the defendant DANIELLE SINDZINGRE oversaw the determination and submission of Société Générale's USD LIBOR rates. The defendant MURIEL BESCOND worked under SINDZINGRE, supervising the Société Générale setters who prepared the Bank's USD LIBOR submissions. BESCOND also ensured that the Paris treasury desk staff executed SINDZINGRE's directions.

16. Manager-1, who reported directly to the defendant DANIELLE SINDZINGRE, was responsible for receiving the day's USD LIBOR submission from the Paris treasury desk employees and transmitting the submission to Thomson Reuters.

17. In or about May 2010, following inquiries by outside analysts questioning the high level of Société Générale's LIBOR submissions, Société Générale began submitting materially false USD LIBOR estimates to the BBA.

18. To carry out the scheme, the defendant DANIELLE SINDZINGRE instructed her subordinates at the Paris treasury desk, including the defendant MURIEL BESCOND, to make USD LIBOR submissions that were lower than Société Générale's true estimated borrowing costs from other banks. Thus, on or about May 21, 2010, by e-mail, SINDZINGRE informed BESCOND and other employees of the Paris treasury desk, including Setter-1, Setter-2, Setter-3 and Setter-4, in sum and substance, that SINDZINGRE had met with members of Société Générale's General Directorate the previous night and had been required to discuss the fact that Société Générale's high USD LIBOR submissions harmed Société Générale's reputation for financial soundness. SINDZINGRE knowingly and intentionally instructed BESCOND and other employees of the Paris treasury desk to submit estimates of interest rates that were lower than the highest of the middle eight estimates whose average formed the USD LIBOR fix.

19. The defendant MURIEL BESCOND knowingly and intentionally carried out the defendant DANIELLE SINDZINGRE's instructions by instructing Setter-1, Setter-2, Setter-3 and Setter-4 to make false and misleading USD LIBOR submissions, which Manager-1 caused to be transmitted to the BBA via Thomson Reuters. For example, on or about May 23, 2010, by e-mail to SINDZINGRE, BESCOND, in sum and substance, agreed to do as SINDZINGRE ordered, but cautioned that the submissions Société Générale made would be false.

20. On numerous occasions in subsequent months, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, knowingly and intentionally caused Société Générale to make false USD LIBOR submissions that were lower than the actual rates that the Bank paid to borrow USDs on the same day. For example, on or about June 14, 2010, SINDZINGRE and BESCOND, together with others, caused Société Générale to submit a three-month USD LIBOR rate of 0.5525. That same day, the interest rates at which Société Générale actually borrowed funds in the market ranged from 0.59 to 0.62.

21. Similarly, on or about June 15, 2010, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, caused Société Générale to submit a three-month USD LIBOR rate of 0.5525. That same day, the interest rates at which Société Générale borrowed funds in the market ranged from 0.59 to 0.62.

22. Likewise, on or about June 16, 2010, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, caused Société Générale to submit a three-month USD LIBOR rate of 0.5525. That same day, the interest rates at which Société Générale borrowed funds in the market ranged from 0.61 to 0.65.

23. In or about June 2010, the defendant DANIELLE SINDZINGRE became concerned that Société Générale's manipulation of USD LIBOR rates could draw undesired regulatory attention. On or about June 17, 2010, by e-mail, SINDZINGRE advised her superiors, in sum and substance, that Société Générale had been submitting USD LIBOR rates that were below the interest rates that the Bank was actually paying in the market. SINDZINGRE warned, in sum and substance, that Société Générale's false USD LIBOR submissions violated BBA rules and exposed the Bank to accusations of market manipulation. SINDZINGRE suggested, in sum and substance, that Société Générale begin to increase the rates

it was submitting incrementally to reach the rates at which the Bank was actually borrowing money in the market.

24. On or about June 17, 2010, the same day that the defendant DANIELLE SINDZINGRE sent the above-referenced e-mail, SINDZINGRE and the defendant MURIEL BESCOND, together with others, caused Société Générale to submit a three-month USD LIBOR rate of 0.5555. That same day, the interest rates at which Société Générale borrowed funds in the market ranged from 0.6 to 0.65.

25. Thereafter, despite the defendant DANIELLE SINDZINGRE's suggestion to increase the level of USD LIBOR submissions, Société Générale, with the knowing participation of SINDZINGRE and the defendant MURIEL BESCOND, continued at times to make false and misleading USD LIBOR submissions that were lower than, and therefore did not accurately reflect, Société Générale's actual USD borrowing costs.

26. For instance, on or about June 22, 2010, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, caused Société Générale to submit a three-month USD LIBOR rate of 0.56. That same day, the interest rates at which Société Générale borrowed funds in the market ranged from 0.615 to 0.63.

27. Furthermore, on or about June 28, 2010, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, caused Société Générale to submit a three-month USD LIBOR rate of 0.5625. That same day, the interest rates at which Société Générale borrowed funds in the market ranged from 0.62 to 0.64.

28. Likewise, on or about January 17, 2011, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, caused Société Générale to

submit a three-month USD LIBOR rate of 0.3125. That same day, the interest rates at which Société Générale borrowed funds in the market ranged from 0.36 to 0.375.

29. On or about February 15, 2011, by e-mail, the defendant DANIELLE SINDZINGRE informed certain high level executives at Société Générale, in sum and substance, that the Bank's USD LIBOR submission was three to five basis points below the accurate estimate of the interest rates at which the Bank could borrow money in the market. SINDZINGRE again suggested, in sum and substance, that Société Générale increase its LIBOR submissions to the Bank's actual borrowing costs.

30. On or about February 16, 2011, by e-mail, one of the defendant DANIELLE SINDZINGRE's superiors responded, in sum and substance, that Société Générale should increase its submissions incrementally to reach the Bank's actual borrowing costs. Despite SINDZINGRE's suggestion to increase the level of USD LIBOR submissions, Société Générale, with the knowing participation of SINDZINGRE and the defendant MURIEL BESCOND, continued at times to make false and misleading USD LIBOR submissions that were lower than, and therefore did not accurately reflect, Société Générale's actual USD borrowing costs, through at least in or about October 2011.

31. On or about October 26, 2011, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, caused Société Générale to submit a three-month USD LIBOR rate of 0.46. That same day, the interest rates at which Société Générale borrowed funds in the market ranged from 0.75 to 1.27.

## COUNT ONE
(Conspiracy to Transmit False, Misleading and Knowingly Inaccurate Commodities Reports)

32. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

33. In or about and between May 2010 and October 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, did knowingly and willfully conspire to deliver and cause to be delivered for transmission through the mails and interstate commerce by telephone, telegraph, wireless and other means of communication false and misleading and knowingly inaccurate reports concerning market information and conditions that affected and tended to affect the price of one or more commodities in interstate commerce, contrary to Title 7, United States Code, Section 13(a)(2).

34. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, did commit and cause to be committed, among others, the following:

### OVERT ACTS

a. On or about May 21, 2010, SINDZINGRE sent an e-mail to BESCOND and other employees of Société Générale's Paris treasury desk instructing them to submit estimates of interest rates that were lower than the highest estimates of the middle eight banks making USD LIBOR submissions.

b. On or about May 23, 2010, SINDZINGRE sent an e-mail to BESCOND and her staff instructing them not to submit estimates that were the highest of the middle eight banks making USD LIBOR submissions.

      c.      On or about May 23, 2010, BESCOND sent an e-mail to SINDZINGRE, agreeing to do as SINDZINGRE instructed.

      d.      On or about June 17, 2010, SINDZINGRE sent an e-mail to her superiors suggesting that the Bank incrementally increase the USD LIBOR rates it was submitting.

      e.      On or about February 15, 2011, SINDZINGRE notified her superiors at Société Générale by e-mail that the Bank's USD LIBOR submission was below the accurate estimate of the interest rates the Bank would be required to pay when borrowing money and suggested that the Bank increase its LIBOR submissions to the Bank's actual borrowing costs.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNTS TWO THROUGH FIVE
(Transmission of False, Misleading and Knowingly Inaccurate Commodities Reports)

35.      The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

36.      On or about the approximate dates specified below, within the Eastern District of New York and elsewhere, the defendants DANIELLE SINDZINGRE and MURIEL BESCOND, together with others, did knowingly and intentionally deliver and cause to be delivered for transmission through the mails and interstate commerce by telegraph, telephone, wireless and other means of communication false and misleading and knowingly inaccurate reports concerning market information and conditions, to wit: the following USD LIBOR submissions, each in the three-month tenor, that affected and tended to affect the price of one or more commodities in interstate commerce, to wit: three-month Eurodollar futures contracts:

| Count | Date | Description of False, Misleading and Knowingly Inaccurate Report |
|---|---|---|
| TWO | June 16, 2010 | Société Générale's USD LIBOR submission of 0.5525 transmitted from outside the United States to the Eastern District of New York |
| THREE | June 22, 2010 | Société Générale's USD LIBOR submission of 0.56 transmitted from outside the United States to the Eastern District of New York |
| FOUR | June 28, 2010 | Société Générale's USD LIBOR submission of 0.5625 transmitted from outside the United States to the Eastern District of New York |
| FIVE | January 17, 2011 | Société Générale's USD LIBOR submission of 0.3125 transmitted from outside the United States to the Eastern District of New York |

(Title 7, United States Code, Section 13(a)(2); Title 18, United States Code, Sections 2 and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
for SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
UNITED STATES DEPARTMENT
OF JUSTICE

_____
BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. # 2017R01243

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

*DANIELLE SINDZINGRE and MURIEL BESCOND,*

Defendants.

# INDICTMENT

(T. 7, U.S.C., § 13(a)(2); T. 18, U.S.C., §§ 371, 2 and 3551 et seq.)

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

*Matthew S. Amatruda, Assistant U.S. Attorney (718) 254-7012*