# EXHIBIT A



MDR:KH:PA:bk
182-38558

**U.S. Department of Justice**

*Criminal Division*
*Office of International Affairs*

_____

Washington, D.C. 20530

TO:        The Central Authority of France

SUBJECT:   Third Supplemental Request for Assistance in the Investigation of Manipulation of
           LIBOR and EURIBOR by Certain Banks and Their Employees

## I.    INTRODUCTION

The Central Authority of the United States submits this third supplemental request for

assistance from the appropriate authorities in France pursuant to the Treaty on Mutual Legal

Assistance in Criminal Matters Between the United States of America and France ("Treaty"), as

supplemented by the 2004 U.S.-EU Agreement on Mutual Legal Assistance.   As set out in the

initial request for assistance, the Antitrust Division ("Antitrust Division") and the Criminal

Division, Fraud Section, ("Criminal Division") of the United States Department of Justice

(collectively, "DOJ" or "the prosecutors") and the Federal Bureau of Investigation ("FBI") have

been conducting a criminal investigation into whether certain individuals and companies violated

United States laws by conspiring, among other things, to falsely report LIBOR and/or EURIBOR

interest rates to benefit their trading positions and/or to minimize reputational risk that could result

from reporting a high LIBOR or EURIBOR interest rate.   The U.S. Commodity Futures Trading

Commission ("CFTC") has also been conducting a similar investigation and joins the prosecutors

in submitting this supplemental request.   This activity is believed to have adversely affected U.S.

commerce and certain U.S. entities.

1

The prosecutors previously asked for assistance in obtaining documents from several companies, including Société Générale.  Société Générale retained the law firm of Mayer Brown LLP to conduct an investigation into the conduct described above, and to identify and produce documents responsive to the prosecutors' request for documents.  The prosecutors subsequently submitted a supplemental request for assistance to compel representatives of Société Générale to appear to be interviewed regarding the results of the investigation, and in a second supplemental request, made it clear that the "representatives" whom the prosecutors and the CFTC sought to interview were the pertinent members of Mayer Brown LLP ("Mayer Brown").

Based upon, among other things, the documents produced and information provided pursuant to these prior requests, the prosecutors have found evidence that senior management at Société Générale directed the individuals who were responsible for contributing the U.S. dollar LIBOR rates to submit rates that were lower than Société Générale should have submitted in order to protect Société Générale from reputational harm.

As part of its investigation, the prosecutors would like to interview individuals whom the prosecutors believe were involved in and have knowledge of the conduct described above.  As a result, the prosecutors now submit this third supplemental request, pursuant to Article 16 of the Treaty, and request that the French authority executing this request invite these individuals – listed below – to personally appear in the United States for interviews with the prosecutors, FBI, and CFTC.  The prosecutors further request that the French authority executing this request inform the prosecutors of the individuals' responses to the requests for interviews.  The prosecutors understand that Société Générale will reimburse the individuals for their costs of travel, and the prosecutors request that the French authority executing this request inform the individuals of this information.

2

## II.    TIME CONSTRAINTS

This request is time sensitive. The evidence gathered to date shows that conduct relevant to the investigation took place between 2005 and 2012, and that the conduct that is the primary focus of these interviews took place between 2010 and 2012. The statutes of limitations for some of the crimes under investigation may be only five years. Further, conduct with regard to certain individuals and entities may not have continued until 2012. Accordingly, the statutes of limitations may expire sooner with regard to certain individuals and entities than with regard to others, perhaps leading to the United States being barred from bringing certain charges against certain individuals and entities. To prevent this injustice and permit charging all culpable individuals and entities, the U.S. authorities respectfully request that this request be administered on an expedited basis.

## III.    REQUEST FOR CONFIDENTIALITY

This request is highly sensitive in that the prosecutors are conducting an ongoing criminal investigation that is subject to U.S. secrecy laws. Accordingly, the U.S. authorities respectfully ask that this request be kept confidential in all respects, and that neither its contents nor its subject matter be shared with any persons (including the subjects of the investigation), or any government officials whose knowledge is not necessary for purposes of executing this request. In addition, please advise all who must be made aware of this request for assistance that the request, its contents and its subject matter are to be kept confidential and should not be shared except as described above. In order to avoid disclosure to third parties (including parties civiles), if a related investigation exists in France, please ensure that this request is NOT placed in the French file or dossier without the express authorization of the United States; instead we ask that this request be placed in a separate mutual legal assistance file or dossier.

3

## IV.   SUMMARY OF THE FACTS

The prosecutors incorporate by reference all of the facts set out in the initial and supplemental requests for assistance, but have set out additional facts below.

LIBOR is a daily reference rate based on the interest rates at which banks borrow unsecured funds from other banks in the London wholesale interbank market.  It is the primary benchmark for short-term interest rates globally and is incorporated into financial products including adjustable rate mortgages, forward rate agreements, and interest rate swaps and options.

The LIBOR rates for 10 currencies, including the U.S. dollar, are calculated and published by Thomson Reuters on behalf of the British Bankers' Association ("BBA") after 11:00 AM (London time) each day.  The LIBOR rates are a trimmed average of interbank rates offered by designated contributor banks, for maturities ranging from overnight to one year.  According to the rules of the BBA, the rates submitted by each bank are to be formed from that bank's perception of its cost of funds in the interbank market, and are not to be influenced by the bank's own trading positions.

Each currency desk in a contributor bank has a Thomson Reuters application installed. Each business day, between 11:10 AM and 11:20 AM, an individual at each bank, typically a currency dealer, takes the bank's own rates for the day and inputs them into this application, which links directly to the "fixings team" at Thomson Reuters.  Once Thomson Reuters receives each contributor's rates, the rates are ranked.  The top and bottom quartiles are dropped (this process is known as "the trimming").  The middle two quartiles reflecting 50 percent of the quotes are then averaged to create the LIBOR.  This process is repeated for every currency and maturity, resulting in 150 rates produced every business day.  Société Générale became a member of the U.S. dollar LIBOR panel in February 2009.

4

The evidence gathered by prosecutors in the LIBOR investigation indicates that, during certain time periods, senior management at certain panel banks pressured their U.S. dollar LIBOR submitters to submit rates that were low enough such that the banks would not draw attention to themselves and incur reputational harm by signaling that their borrowing costs were high.  These falsely low LIBOR contributions were lower than the contributions the banks otherwise would have made.

The evidence gathered to date, including documents and information produced by Société Générale and its counsel, Mayer Brown, indicates that senior management at Société Générale directed the individuals who were responsible for contributing the U.S. dollar LIBOR rates to submit rates that were lower than Société Générale should have submitted in order to protect Société Générale from reputational harm.   Thus far, the evidence indicates that the directives to submit these falsely low rates came from: (1) Michele Peretie, the then Chief Executive Officer of Société Générale's Corporate Investment Bank, who is now a former employee of Société Générale; (2) Didier Valet, the then Chief Financial Officer of Société Générale, who is currently the Chief Executive Officer of Société Générale's Corporate Investment Bank and Global Investment and Management Services; (3) Danielle Sindzingre, the then Global Head of Treasury of Société Générale's Corporate Investment Bank, who is now Head of Fixed Income and Treasuries; and (4) Muriel Bescond, the then Head of the Paris Treasury Desk, who is now Deputy Head of Short Term Interest Rate Swaps and FX.   The evidence further indicates that these directives were given to the following individuals, who were treasurers on the U.S. dollar currency desk: (1) Ileana Pietraru, who is now Global Head of Treasury; (2) Bassam Senno; (3) Fabrice Farina; and (4) Matteo Prado, who is now a former employee of Société Générale.

### V.     THE OFFENSES

The prosecutors incorporate by reference the offenses as set out in the initial request for assistance.

### VI.    ASSISTANCE REQUESTED

Pursuant to Article 16, please invite the individuals listed below to personally appear in the United States for interviews with the prosecutors, FBI, and CFTC, pursuant to Article 16.   To the extent counsel has been retained in France, the attorneys representing the individuals in this matter, along with their respective law firms, are listed in the chart next to each of the individuals' names.

### VII.   PROCEDURE TO BE FOLLOWED

Please ask the French authority executing this request to do the following:

1.  Invite the following individuals to personally appear in the United States for interviews with the prosecutors, FBI, and CFTC pursuant to Article 16:

| Individual | Attorney | Law firm |
|---|---|---|
| Michele Peretie | Aurelien Chardeau | Dentons |
| Didier Valet | Dominique Borde | Paul Hastings |
| Danielle Sindzingre | Stephane de Navacelle | Navacelle Avocats |
| Muriel Bescond | Hubert de Vauplane | Kramer Levin Naftalis & Frankel LLP |
| Ileana Pietraru | | |
| Fabrice Farina | | |
| Bassam Senno | | |
| Matteo Prado | | |

2. Inform the prosecutors of the individuals' responses to the requests for interviews.

Coordination with U.S. Liaison Magistrate

In addition, please coordinate the general execution of this request for assistance with U.S. Justice Attaché Peter Axelrod (Liaison Magistrate for the United States), at the U.S. Embassy in Paris, France (01.43.12.22.14 or 06.13.36.16.86, peter.axelrod2@usdoj.gov).

April 21, 2015
Date

Kenneth J. Harris
Acting Deputy Director
Office of International Affairs
Criminal Division

7